UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Shelton BEAMAN,

                              Petitioner,

    -against-

Bruce YELICH, et al.,

                              Respondents.

------------------------------------------------------------X

12-CV-05304 (ALC)(SN)

REPORT AND
RECOMMENDATION

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE ANDREW L. CARTER, Jr.:**

    *Pro se* petitioner Shelton Beaman, alleging that he is being held in state custody in violation of his federal constitutional rights, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (the "petition"). After Beaman pled guilty to Reckless Endangerment in the First Degree, and then violated his plea agreement, he was sentenced to an indeterminate prison term of 1½ to 4½ years. In his amended petition, Beaman argues that his guilty plea was not knowingly and intelligently entered because his counsel did not explain the elements of the crime to which he was pleading guilty. Because this argument is procedurally barred, and otherwise meritless, I recommend that Beaman's petition for *habeas corpus* relief be DENIED.

## BACKGROUND

    The following facts are derived from the parties' briefs and the transcripts of Beaman's court proceedings.

### I.    Factual Background

    On January 4, 2009, Beaman set fire to pieces of paper and cloth in the kitchen and bathroom of his apartment located at 686 West 204th Street, New York, New York. Following a

911 call, firefighters attempted to respond to the scene but Beaman would not let them in the front door. The firefighters therefore entered Beaman's apartment through the fire escape and extinguished the remnants of the fires Beaman had lit.

Two days later, Beaman again set fire to pieces of paper and cloth in his apartment. Following a 911 call, firefighters responded but Beaman was not in his apartment. The firefighters forced their way inside and again extinguished Beaman's fires, which included an overturned candle they discovered burning in Beaman's locked bedroom. Neighbors stated that earlier they had observed Beaman breaking the hallway's smoke detectors and screaming that he was going to burn the building down.

A grand jury charged Beaman with two counts of Attempted Arson in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 110.00 & 150.15), two counts of Reckless Endangerment in the First Degree (Penal Law § 120.25), and two counts of Reckless Endangerment in the Second Degree (Penal Law § 120.20).

**A. Plea Proceedings**

On October 23, 2009, Beaman appeared with his attorney before the Honorable Michael Obus in New York County Supreme Court (the "N.Y. Supreme Court"). Justice Obus stated that the parties had reached a plea agreement where Beaman would plead guilty to Reckless Endangerment in the First Degree and the prosecution would dismiss the Attempted Arson in the Second Degree counts. A pending misdemeanor case against Beaman also would be dismissed as covered by this disposition, and Justice Obus would adjourn the case so that Beaman could enter the Veritas drug treatment program. On the next court date, provided that Beaman had not violated terms of the agreement, Justice Obus would impose a sentence of time served, five years of probation, and approximately two years in a drug treatment program.

The terms of the plea agreement were confirmed by counsel for both parties. Beaman stated that he was provided sufficient opportunity to discuss the plea with counsel, and that he understood the terms of his plea agreement. Justice Obus explained that Beaman would be pleading guilty to reckless endangerment for allegedly setting a fire in his apartment at 686 West 204th Street on January 4, 2009. The prosecution's charge, Justice Obus stated, was that "evincing a depraved indifference to human life[, he] recklessly engaged in conduct which created a grave risk of death to another person." (Respondent's Declaration in Opposition to the Amended Petition for a Writ of *Habeas Corpus* ("Resp. Decl.") at Ex. A (the "Plea Transcript") at 5-6.) After listening to this charge, Beaman pled guilty to Reckless Endangerment in the First Degree. He stated that his plea was based neither on threats nor promises (other than the terms of the plea), and he understood that, by pleading guilty, he gave up his rights to have a trial, present evidence, testify on his own behalf, confront the prosecution's witnesses, and require the prosecution to prove his guilt beyond a reasonable doubt.

Justice Obus explained to Beaman that he would be released from custody so that he could participate in the presentence report interview with the Department of Probation and then immediately enter the Veritas drug treatment program with a representative from the facility. Justice Obus reiterated that on the next court date the promised sentence would be imposed – provided that Beaman participated in the program, cooperated with the Department of Probation, and avoided arrest before the sentencing date. Beaman confirmed that he understood, and the court, therefore, accepted his plea.

In parting, Justice Obus warned Beaman that if he violated the terms of the agreement, the promised sentence would no longer bind the court. Rather, the court would be free to decide the proper sentence for itself, up to a maximum of seven years. Beaman affirmed again that he

understood, and the matter was adjourned until a sentencing hearing scheduled for December 3, 2009.

### B. Sentencing Hearing

On January 6, 2010, Beaman appeared before Justice Obus for sentencing. The prosecution explained that after being released on his own recognizance, Beaman went with a representative of Veritas to the Department of Probation offices on the tenth floor of the courthouse and then absconded. Beaman later was found sleeping in a subway car and was arrested on the charge of criminal possession of a weapon. Accordingly, the prosecution asked that Beaman be sentenced to 2⅓ to 7 years on his plea to Reckless Endangerment in the First Degree. Beaman's counsel responded by asking the court to either allow Beaman another chance to enter a drug treatment program or sentence him to one year in jail. Beaman also addressed the court and asked to be allowed to enter a drug treatment program. After consideration, Justice Obus sentenced Beaman to an indeterminate prison term of 1½ to 4½ years.

## II. Beaman's Direct and Collateral Appeals

Following his incarceration, Beaman filed a motion to vacate the judgment, a direct appeal, a second motion to vacate the judgment and a petition for writ of error *coram nobis*.

### A. First Motion to Vacate Judgment

In *pro se* papers dated February 11, 2010, and May 13, 2010, Beaman moved to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that: (1) the felony complaint was facially insufficient and jurisdictionally defective; (2) the indictment was jurisdictionally defective; (3) the indictment should have been dismissed because it was obtained in violation of his right to testify before the grand jury; (4) his constitutional due

process rights were violated; and (5) the fire marshal who arrested him exceeded his authority. The prosecution opposed this motion.

On August 5, 2010, the N.Y. Supreme Court denied Beaman's motion. Justice Obus found that Beaman's claims were procedurally barred under CPL § 440.10(2)(b) because sufficient facts appeared on the record to permit adequate appellate review during his then-pending appeal. See CPL § 440.10(2)(b) (a court must deny a motion to vacate when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal").

In the alternative, Justice Obus rejected Beaman's claims on the merits. First, he rejected Beaman's claim that the felony complaint was facially insufficient and jurisdictionally defective because Beaman ultimately was prosecuted by an indictment. The complaint upon which Beaman was held before indictment also was facially sufficient.

Second, Justice Obus denied Beaman's claim that the indictment was jurisdictionally defective because the claim was founded on hearsay and was not verified. Beaman, who had not reviewed the Grand Jury minutes, made conclusory accusations despite the court's ruling on the Grand Jury minutes in a written decision, which found that the minutes were legally sufficient to support the charges and that the proceedings were properly conducted. Moreover, the form and content of the indictment was proper: it provided sufficient information to apprise Beaman of the conduct of which he was accused.

Third, Justice Obus held that Beaman's claim that he was denied his right to testify before the grand jury was waived when he failed to file a motion, pursuant to CPL § 190.50, to dismiss the indictment within five days of his arraignment on the indictment. It also was

meritless: before the indictment's filing, Beaman's attorney withdrew Beaman's notice that he intended to testify at the grand jury. Thus, where there was no violation, Beaman could make no claim.

Fourth, Justice Obus held that Beaman's claim that he was denied his due process rights was contradicted by the record, and his argument that the statutes under which he was prosecuted were constitutionally infirm was conclusory and without merit. Finally, Justice Obus rejected Beaman's claim that the fire marshal who arrested him lacked authority to do so.

The prosecution did not serve a copy of the decision on Beaman and, accordingly, Beaman did not seek leave to appeal from the denial of his motion.

### B. Direct Appeal

On direct appeal, Beaman's counsel filed a brief in the Appellate Division of the Supreme Court, First Department (the "Appellate Division"), arguing that Beaman's sentence was excessive and should be reduced in the interest of justice. The prosecution opposed this motion. On December 2, 2010, the Appellate Division summarily affirmed the judgment of conviction without opinion. People v. Beaman, 912 N.Y.S.2d 476 (1st Dep't 2010) (table). Beaman did not seek leave to appeal to the New York Court of Appeals.

### C. Second Motion to Vacate Judgment

In *pro se* papers dated January 17, 2012, Beaman moved for a second time to vacate the judgment pursuant to CPL § 440.10, arguing that his guilty plea was not knowingly and intelligently entered because he did not understand the elements of the charge to which he pled guilty. The prosecution opposed Beaman's motion, and Beaman replied. Beaman's amended petition for writ of *habeas corpus* is predicated on this claim.

On May 3, 2012, the N.Y. Supreme Court denied Beaman's motion because it was procedurally barred by multiple subsections of § 440. Beaman's motion was procedurally barred under CPL § 440.30 because it was supported by an "affirmation," but that document was not notarized and therefore did not qualify as a sworn statement. It also was based on conclusory and unsupported claims that were refuted by the record, and therefore barred under CPL § 440.10(3)(d). With the exception of Beaman's claim that his counsel failed to pursue certain "strategic defenses," the motion was procedurally barred under CPL § 440.10(2)(c) because it was based on matters that were part of the record and should have been raised on direct appeal. And it also was barred under CPL § 440.10(3)(c) because Beaman had filed a prior CPL § 440.10 motion wherein he could have raised his current claims, but failed to.

Alternatively, Justice Obus found Beaman's claims meritless. He summarily denied Beaman's assertion that his trial counsel was ineffective for failing to pursue "obvious strategic defenses" because Beaman did not explain what strategic defenses were omitted. He rejected Beaman's claim that his plea was not knowingly entered because the minutes of his plea allocution established that Beaman was told the elements of Reckless Endangerment in the First Degree, and his plea was knowingly, voluntarily, and intelligently entered. Beaman, moreover, failed to show that his attorney's performance was deficient or that he suffered any prejudice as a result of the (by all accounts) beneficial plea agreement his counsel negotiated for him. And he rejected Beaman's claim that the court should "be removed of original jurisdiction" because Beaman set forth no allegations to suggest that the court had a real or potential conflict of interest, and did not provide any other basis for judicial disqualification.

Beaman sought leave to appeal the denial of his CPL § 440.10 motion, which the prosecution opposed. On November 13, 2012, the Appellate Division denied Beaman's leave application.

### D. Writ of Error *Coram Nobis*

In *pro se* papers dated April 24, 2012, Beaman filed a petition for writ of error *coram nobis* on the ground that his appellate counsel provided ineffective assistance. Observing that he was charged with Attempted Arson in the Second Degree – a class C violent felony offense – Beaman claimed that he could plead guilty only to class B, C or D violent felony offenses. His guilty plea to First Degree Reckless Endangerment – a class D non-violent felony offense – therefore was invalid, and his appellate counsel was ineffective for failing to make the argument on appeal.

The prosecution opposed Beaman's petition, arguing that Beaman permissibly pled guilty to a non-violent felony offense. Because the Attempted Arson in the Second Degree charge was dismissed as part of the plea agreement, his appellate counsel could not be ineffective for failing to raise that meritless claim. On December 4, 2012, the Appellate Division summarily denied Beaman's petition. Beaman did not seek leave to appeal the decision to the New York Court of Appeals.

### III. Beaman's Federal *Habeas Corpus* Petition

On July 5, 2012, Beaman petitioned for a writ of *habeas corpus*, alleging three grounds for constitutional violation. On October 2, 2012, Chief Judge Loretta A. Preska ordered that Beaman amend his petition and advised him that an amended petition "completely replaces the original [p]etition." On November 26, 2012, Beaman filed an amended petition asserting one new claim but declining to reassert any claims presented in his original petition. On April 12,

2013, respondent opposed the petition, challenging only the one ground in the amended petition. On April 17, 2013, the Honorable Andrew L. Carter, Jr., referred this matter to my docket for a report and recommendation. On April 24, 2013, Beaman filed his reply, and the motion became fully briefed.

## DISCUSSION

### I. Timeliness

Beaman's *habeas corpus* petition was timely filed. The Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days from the date the New York State Court of Appeals denies leave to appeal – *i.e.*, after the "period [expired] to petition for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2002).

The AEDPA tolls the one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, 191 (2006) (emphasis in original) (citing Carey v. Saffold, 536 U.S. 214 (2002)).

Here, the Appellate Division affirmed Beaman's conviction on December 2, 2010, and Beaman did not seek leave to appeal that judgment to the Court of Appeals. Beaman filed a

motion to vacate the judgment on February 11, 2010 – before his conviction became final – which was denied on August 5, 2010. That litigation is still pending in state court, however, because the prosecution has not yet served Beaman with a copy of the state court's decision denying his motion. Moreover, Beaman's petition for writ of error *coram nobis* was not denied until December 4, 2012. Accordingly, Beaman's petition, filed on July 5, 2012, is timely.

## II.     Exhaustion

Before a petitioner is permitted to seek review from a federal court, he first must exhaust all state provided remedies. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); Rose v. Lundy, 455 U.S. 509, 515-16 (1982). A claim is deemed exhausted if the petitioner: (1) fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear his claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844-48.

In his second CPL § 440.10 motion – which raised the one claim advanced in this petition – Beaman cited federal law and then sought leave to appeal the denial of his claim to the Appellate Division. Beaman raised his claim in constitutional terms and presented it to the highest state court where it could be heard. Accordingly, his claim is exhausted.

## III.    Challenge to Plea's Voluntariness

Beaman argues that he is entitled to *habeas* relief on the ground that his guilty plea was not voluntarily or intelligently entered because counsel did not inform him of the elements of the crime to which he pled. This claim fails because it is procedurally barred by an adequate and independent state law ground.

### A. Procedural Bar

Beaman's claim is procedurally barred. Although federal courts are required to construe *pro se* litigants' *habeas* petitions liberally, see Roldan v. Racette, 984 F.2d 85, 87 (2d Cir. 1993); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972), a state court decision will not be reviewed if it "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); Bierenbaum v. Graham, 607 F.3d 36, 47 (2d Cir. 2010). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (finding that state court's reliance on a procedural ground as one basis for the denial of the claim precludes *habeas* review even if it also considered the merits of the claim).

A "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state, and application of the rule would not be 'exorbitant.'" Bierenbaum, 607 F.3d at 47 (quoting Lee, 534 U.S. at 376). Three factors (the "Lee factors") are useful in deciding whether the application of the rule would be exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (citation omitted); see Lee, 534 U.S. at 381-85.

Among other procedural bars, the trial court found that Beaman's second motion to vacate the judgment was barred pursuant to CPL § 440.10(2)(c), which provides in pertinent part that a court must deny a motion to vacate a judgment when:

> [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribe period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

With the exception of his claim that counsel failed to pursue certain "strategic defenses," which is not at issue here, the trial court found that Beaman's claims were based on matters that were part of the record and should have been raised on direct appeal. Accordingly, the court found that Beaman's plea claim was procedurally barred under CPL § 410.10(2)(c).

A state court's rejection of a motion to vacate pursuant to CPL § 440.10(2)(c) is a firmly established and regularly followed rule. See Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (finding "district court erred in holding that the state court's application of section 440.10(2)(c) did not constitute an adequate state procedural bar to [petitioner's] federal *habeas* petition"); Acevedo v. Lempke, 10 Civ. 05285 (PAE)(HBP), 2012 WL 360276, at *12 (S.D.N.Y. Feb 3, 2012) ("A state court's rejection of a motion to vacate pursuant to [CPL] § 440.10(2)(c) is an adequate and independent state ground sufficient to preclude review of the claim by way of a writ of *habeas corpus*.").

The use of this procedural bar was not exorbitant, as shown by application of the Lee factors. First, it is readily apparent from the face of the state court's opinion that the court explicitly relied on § 440.10(2)(c) in denying Beaman's § 440.10 motion. See Garcia v. Lee, 10 Civ. 05287 (JPO)(JLC), 2012 WL 3822137, at *20 (S.D.N.Y. Aug. 28, 2012) (applying first factor and noting that state court referred explicitly to 440.10(2)(c) when dismissing petitioner's

ineffective assistance of counsel claim); see also Murden v. Artuz, 497 F.3d 178, 192 (2d Cir. 2007) (same when applying CPL § 440.10(3)(c)). Second, New York courts "consistently require compliance with § 440.10(2)(c) where, as here, the movant has failed to raise on direct appeal record-based claims that he has raised in a motion to vacate pursuant to [CPL] § 440.10." Garcia, 2012 WL 3822137, at *20 (collecting New York state cases). Third, Beaman did not comply with § 440.10(2)(c) – yet, requiring perfect compliances serves the legitimate government interest in "prevent[ing] [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (alterations in original) (quoting People v. Cooks, 491 N.E.2d 676, 678 (N.Y. 1986)); Garcia, 2012 WL 3822137, at *20 (finding third factor weighed against petitioner when he did not comply with § 440.10(2)(c), and perfect compliance with rule served legitimate government interest). Accordingly, the Lee factors do not suggest that the application of § 440.10(2)(c) was exorbitant.

In his reply, Beaman cites to Henderson v. Morgan, 426 U.S. 637 (1976), arguing that "[l]ike [d]efendant in Henderson, [] petitioner did not receive adequate notice of the offense to which he pleaded guilty, and the plea was involuntary and the Court held that the judgment of conviction was entered without due process of law." (Amended Petition ("Pet. Br.") at 5.) But in Henderson "[t]he charge of second-degree murder was never formally made" by either judge or counsel. 426 U.S. at 641 n.6, 645. By contrast, Justice Obus plainly stated the elements of the crime. And regarding a counsel's alleged omission, Henderson noted that "even without [] an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what

he is being asked to admit." Id. at 647. Consistent with the Supreme Court's observation, the transcript here suggests that Beaman's counsel discussed the elements of the crime with Beaman before the hearing, and that during the plea proceeding they had at least two off-the-record conferences.

Furthermore, Henderson was "unique because the trial judge found as a fact that the element of intent was not explained to respondent. Moreover, respondent's unusually low mental capacity . . . foreclose[d] the conclusion that the error was harmless beyond a reasonable doubt." Id. Here there was no similar finding; rather, the trial judge specifically found that Beaman was intelligent and capable of appreciating his plea's significance. (Plea Transcript at 8-9 ("I am satisfied, Mr. Beaman, whatever your concerns were in the past with prior counsel or in general that first of all you certainly understand your rights and your alternatives. Obviously you are an intelligent person . . . . I have no doubt that you know what you are doing here; and that you have an understanding after conferring – I think it's the third attorney on your case now [–] of your rights, choices; and given the choices you are facing, I believe that you are making a knowing and intelligent and voluntary decision to resolve the matter; so I will accept the plea.").)

Because the N.Y. Supreme Court invoked an adequate and independent state law ground in denying Beaman's record-based claim, federal *habeas* review is precluded. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (*per curiam*) (finding that when a state court explicitly invoked a state procedural bar rule, federal *habeas* review is precluded (citing Harris v. Reed, 489 U.S. 255 (1989))).

### B. Exceptions to Procedural Bar

A petitioner may overcome a procedural bar only by demonstrating either cause for the default and resultant prejudice, or that the failure to consider the federal *habeas* claim will result

in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 749-50; see also DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006) ("Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in *habeas* only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (brackets omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998))). To establish cause for default, the petitioner must adduce "some objective factor[] external to [p]etitioner's defense" or futility because "prior state case law has consistently rejected a particular constitutional claim . . . . But futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Gutierrez v. Smith, 702 F.3d 103, 111-12 (2d Cir. 2012) (internal quotation marks and citations omitted). Prejudice requires establishing "actual prejudice resulting from the errors of which [petitioner] complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). This must result in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986).

Beaman has not identified any objective factor that would explain or render futile his failure to raise this claim on direct appeal. Thus, Beaman has failed to demonstrate cause.

Assuming, *arguendo*, that cause was established, Beaman also fails to establish prejudice[1]: his trial judge clearly explained the elements of the crime, even if his attorney never explained those same elements, at least on the record before this Court. Justice Obus told Beaman that the prosecution alleged that he set a fire in his apartment on January 4, 2009, "under circumstances . . . evincing a depraved indifference to human life [where he] recklessly engaged in conduct which created a grave risk of death to another person." (Plea Transcript at 5-6.) The

---

[1] Although the Court need not address the issue of prejudice, see McCleskey v. Zant, 499 U.S. 467, 502 (1991), such inquiry is useful to underscore the basic weakness of Beaman's claim.

Penal Law virtually mimics that formulation: "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." Penal Law § 120.25. Thus, he cannot persuasively claim that he was not informed of the charge.

Beaman's statements, showing that he heard and understood the elements of the crime to which he pled guilty, carry a strong presumption of veracity. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (finding that "the representations of the defendant . . . at [] a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding"). They are conclusive absent a credible reason to discredit them. See United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992) (finding that the district court "could properly reject [defendant's] unsupported allegations that his plea was the result of reliance on his attorney's incorrect characterization of the agreement"). Beaman has not provided such a reason. To the contrary, the record supports Justice Obus's determination that Beaman knowingly and intelligently entered his plea. Among other statements, Beaman confirmed that he understood the charge and entered his plea free from promises or threats. He affirmed his understanding that, in giving up his right to trial, he "necessarily . . . [gave] up the right to present evidence on [his] own behalf at the trial as well as the right to testify if [he] chose to do that; and to confront the [prosecution]'s witnesses, and to put them to their burden of proving [his] guilt to a jury beyond a reasonable doubt." (Plea Transcript at 6-7.) Moreover, he was asked if there was "anything you need to discuss further with your lawyer or you need to ask the Court about which is not entirely clear as to the disposition before I accept your plea, are there any questions[,]" and replied "No." (Id. at 7.) Beaman cannot establish prejudice when his

16

decision was based on a clear understanding of the charge to which he pled, and its consequences.

Finally, Beaman has not demonstrated that the failure to consider his claim would constitute a fundamental miscarriage of justice, which occurs only in that "extraordinary case[] where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. Here, there has been no such demonstration. Indeed, Beaman was informed, on the record, as to the elements of the crime to which he then admitted guilt.

Accordingly, Beaman has failed to overcome the procedural bar to federal review of his claim. See Garcia, 2012 WL 3822137, at *21 (finding no exception to procedural bar when petitioner did not identify "any such objective factor that would explain his failure to raise [his] claims earlier" or demonstrate that "this Court's failure to consider his claims would constitute a fundamental miscarriage of justice"); Acevedo, 2012 WL 360276, at *12 (finding exceptions to procedural bar did not apply when "[p]etitioner d[id] not . . . attempt to make either showing").

## IV.    Ineffective Assistance of Counsel

In the alternative, reading Beaman's petition liberally it might suggest that his counsel provided ineffective assistance when counsel allegedly failed to inform Beaman about the elements of the crime to which he pled. But in analyzing his state court claim, Justice Obus reasonably applied the correct legal rule to the facts of Beaman's case, finding that there was no ineffective assistance of counsel. See 28 U.S.C. § 2254(d). Indeed, for the reasons discussed, Beaman cannot establish that he was prejudiced, even if the Court assumes that counsel never told Beaman the elements of the crime. See Strickland v. Washington, 466 U.S. 668 (1984) (finding that an ineffective assistance of counsel claim requires showing that counsel's

performance was objectively unreasonable and that the client suffered prejudice); Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (applying the Strickland's deferential standard to counsel's performance in a *habeas* petition and finding that "[t]he standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citations omitted)). Thus even if Beaman's petition is read to also present an ineffective assistance of counsel claim, it also must fail.

## CONCLUSION

For these reasons, I recommend that Beaman's petition for *habeas corpus* relief be DENIED. Because Beaman has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

\* \* \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable Andrew L. Carter, Jr. at the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Carter. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:     New York, New York
           June 21, 2013